**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| THOMAS MICHAEL WIGGINS,  ) | |
| ID # 464921, ) | |
|     Petitioner, ) | |
| vs. ) | No. 3:08-CV-2090-K-BH |
| ) | |
| NATHANIEL QUARTERMAN, Director, ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal ) | |
| Justice, Correctional Institutions Division, ) | |
|     Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this action has been referred to the United States Magistrate Judge for findings, conclusions, and recommendation.

**I. BACKGROUND**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a petition for writ habeas corpus pursuant to 28 U.S.C. § 2254 to challenge (1) revocation proceedings related to his September 4, 1987 aggravated sexual assault conviction in Cause No. F86-77710-QL; (2) a denial of sentence credit for time spent in custody on pre-revocation warrants; and (3) a denial of sentence credit for previously awarded "bonus time". Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

Petitioner was accused of sexually assaulting a twenty-five year old female while holding a knife to her throat on December 5, 1985. SSCR[1] at 13. In 1987, a jury found him guilty of aggravated sexual assault, and he was sentenced to twenty-five years imprisonment. (Pet. Writ of Habeas Corpus (Pet.) at 2.) On October 15, 2003, petitioner was released to mandatory supervision in Nebraska. (*See id.* at 7; Attachments to Answers to Magistrate Judge's Questionnaire (MJQ).)

---

[1] "SSCR" refers to the supplemental state court records provided by respondent in June 2009.

On or about August 2, 2005, Nebraska Parole took petitioner into custody on an alleged sexual assault but released him on August 31, 2005, without a new offense or parole violation. SSCR at 14-15. On September 27, 2005, Nebraska Parole conducted a probable cause hearing on an alleged violation of electronic monitoring. *Id.* at 15. Nebraska requested assistance from Texas on October 17, 2005, to extradite petitioner regarding the violation. *Id.* at 13-15. On October 21, 2005, Texas issued a pre-revocation warrant for petitioner's arrest. *Id.* at 11. The warrant was executed on November 2, 2005, and petitioner was returned to Texas custody on November 22, 2005. (*See* Aff. Valdez, attached as Ex. B to Answer.)

On December 21, 2005, petitioner's release was revoked. (Pet. at 5); SSCR at 12. In February 2006, petitioner sought to re-open his revocation hearing. SSCR at 16-18. That request was denied on May 2, 2006. S.H.R.[2] at 55.

In July 2006, petitioner filed a Time Credit Dispute Resolution (TDR). (Answer to Question 2 of MJQ); SSCR at 1. After receiving no response for at least 180 days, petitioner filed a state application for writ of habeas corpus on March 23, 2007, asserting the same four issues raised in this action. (*See* Answer to Question 2 of MJQ; Pet. ¶ 11.) On May 9, 2007, TDCJ responded to the TDR and informed petitioner that to be eligible for "street time" he must not have a "3G offense".[3] SSCR at 2. On October 1, 2008, the Texas Court of Criminal Appeals denied petitioner's state habeas application without written order on the findings of the trial court without a hearing. *See Ex parte Wiggins*, No. WR-27,103-04, slip op. at 1 (Tex. Crim. App. Oct. 1, 2008).

On October 31, 2008, petitioner filed his federal petition for writ of habeas corpus by placing

---

[2] "S.H.R." refers to the state habeas record identified by respondent with EventID # 2342021.

[3] *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g.

2

it in the prison mail system. (Pet. at 9.) Although he checks a box on the standard federal petition to indicate that he challenges "[a] parole revocation proceeding," it is clear that he actually challenges a mandatory supervision revocation proceeding and subsequent denials of time credit. (*See id.* at 2, 7-8.) In his first two claims, he asserts due various process violations during his revocation hearing. (*Id.* at 7.) In his third claim, he complains he was denied time credit for time served in Nebraska on a pre-revocation warrant from August 2 to August 31, 2005, and from November 2 to November 22, 2005. (*Id.*; Answer to Question 1 of MJQ.) In his fourth claim, he asserts that he has been denied credit for sixty days of previously-awarded bonus time. (Pet. at 8.)

In June 2009, respondent filed an answer in which he urges the Court to deny the petition as untimely, or alternatively, on the merits. (Answer at 1, 7-35.) In addition, respondent asserts that Claim 4 is moot because petitioner was again released on mandatory supervision on January 20, 2009. (*Id.* at 35.) On July 29, 2009, petitioner filed a reply to the answer in which he continues to assert that his claims are timely and have merit. (*See* Reply at 1-22.)

## II. JURISDICTION

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 396 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

> This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . . The parties must continue to have a 'personal stake in the outcome' of the lawsuit. This means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."
>     An incarcerated convict's (or a parolee's) challenge to the validity of his con-

3

> viction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction. Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole – some "collateral consequence" of the conviction – must exist if the suit is to be maintained. In recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur).

*Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998) (citations omitted).

Fed. R. Civ. P. 12(h)(3) requires that federal courts dismiss an action whenever it is determined that there is a lack of jurisdiction over the subject matter. The Court may *sua sponte* raise jurisdictional issues. *See Donovan v. Air Transp., Dist. Lodge No. 146*, 754 F.2d 621, 624 (5th Cir. 1985).

## A. <u>Revocation Claims</u>

At the time petitioner filed this § 2254 action in October 2008, he was incarcerated because his mandatory supervised release had been revoked. He specifically attacks the validity of that revocation in his first two claims. Three months later, in January 2009, petitioner was again released to mandatory supervision. In general, an attack on revocation proceedings is rendered moot when the petitioner has been later re-released on mandatory supervision. *Cf. Spencer*, 523 U.S. at 7-8 (discussing parole revocation). An attack is not moot when the petitioner affirmatively demonstrates collateral consequences which resulted from the challenged revocation, however. *Id.* at 14. Petitioner has shown no collateral consequences resulting from the revocation of his supervised release, and it has had no impact on petitioner's maximum discharge date. *Compare* Commitment Data Form dated Nov. 28, 2005, (attached as App. A to Answers to MJQ) (showing pre-revocation, maximum discharge date of Mar. 10, 2015) *with* Aff. Valdez (showing same maximum discharge

date post-revocation). Consequently, petitioner's first two revocation claims do not meet Article III's injury-in-fact requirement, and the Court lacks jurisdiction over them.

**B. Sixty-day Bonus Time Claim**

Respondent asserts that petitioner's fourth claim that he was denied sixty days of previously awarded bonus time is moot due to his release to mandatory supervision on January 20, 2009. (Answer at 35.) Because petitioner seeks a sixty-day credit toward eligibility for parole, and he has now been released, he contends petitioner has received the relief sought in this claim. (*Id.*)

Petitioner seeks restoration of sixty-days credit allegedly given to him through the Texas Prison Management Act (PMA).[4] (*See* Pet. at 8.) The version of the PMA in effect on the date petitioner committed his offense applies to his sentence. *Story v. Collins*, 920 F.2d 1247, 1251-52 (5th Cir. 1991). Because petitioner committed his offense on December 5, 1985, the 1985 version applies to him. That version provided that prisoners could receive administrative good conduct time in certain circumstances. *See id.* at 1252 (discussing 1985 version). Because petitioner was released to mandatory supervision in January 2009, his claim for restoration of these good time credits towards his eligibility for release on parole is moot. *See Adair v. Dretke*, 150 Fed. App'x 329, 331-32 (5th Cir. 2005) (per curiam); *Gray v. Dretke*, 135 Fed. App'x 711, 711-12 (5th Cir. 2005) (per curiam) (same).

In summary, the Court lacks jurisdiction over petitioner's first two revocation claims and his fourth bonus time credit claim for lack of a live controversy.

---

[4] See copy of statute (Tex. Rev. Civ. Stat. Ann. Art. 6184o (Vernon Supp. 1986), *amended by*, Act of Feb. 20, 1987, ch. 1, §§ 1-14, 1987 Tex. Sess. Law Serv. 19 (Vernon), *repealed by* Acts of 1989, ch. 212, § 3.03) attached as Ex. A to Answer.

## III. APPLICABLE LAW

Congress enacted AEDPA on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed his petition after its effective date, the Act applies in this case.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). Consequently, these AEDPA standards apply to petitioner's time-credit claim addressed on the merits in the state habeas process.

The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption "applies to explicit findings of fact and to 'those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'" *Williams v. Quarterman*, 551 F.3d 352, 358 (5th Cir. 2008) (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001)).

## IV.  PRE-REVOCATION TIME

In his third claim, petitioner asserts that he is being denied time credit for time served in Nebraska on a pre-revocation warrant from August 2 to August 31, 2005, and from November 2 to November 22, 2005.  (Pet. at 7.; Answer to Question 1 of MJQ.)  Respondent argues the claim is untimely and without merit.  (Answer at 13-19, 31-32.)

Respondent's timeliness argument is premised on the theory that petitioner's TDR did not statutorily toll the limitations period.  (Answer at 13-15.)  The Northern District of Texas has specifically rejected that position based on language in *Kimbrell v. Cockrell*, 311 F.3d 361, 364 (5th Cir. 2002) that "the timely pendency of prison grievance procedures [toll] the one-year period".  *See Hunter v. Quarterman*, No. 4:06-CV-0342-A, 2006 WL 2914162 at *2 (N.D. Tex. Oct. 11, 2006).  *Kimbrell* and *Hunter* provide persuasive authority for rejecting respondent's argument that the petitioner's claim is untimely.

Respondent next argues that petitioner has received credit for the time in custody in November 2005, and is not entitled to credit for the August confinement.  (Answer at 31-32.)  Respondent explains that although Texas law provides that a parolee is entitled to time credit for the incarceration period between execution of a pre-revocation warrant and the date of parole revocation, the August confinement did not result from any pre-revocation warrant.  (*Id.* at 32.)  Additionally, respondent argues that petitioner cannot succeed on the merits because he has not carried his burden under 28 U.S.C. § 2254(d).  (*Id.* at 22-23.)

On review of his state habeas application, the trial court found that petitioner's sentence was credited for time in custody in November 2005 on a pre-revocation warrant, and that he had not been improperly denied time credits for tome spent in custody on that warrant.  *Id.* at 122.  It further

7

found that petitioner's time credits were being properly calculated. *Id.* Based in part on those findings, it concluded that petitioner's state habeas application had no merit. *Id.* at 123. The Texas Court of Criminal Appeals denied the state application on the trial court's findings. *See Ex parte Wiggins*, No. WR-27,103-04, slip op. at 1 (Tex. Crim. App. Oct. 1, 2008).

By denying petitioner's state habeas application, the State upheld the denial petitioner's time credit claim and has adjudicated this claim on the merits. Unless petitioner presents clear and convincing evidence to show otherwise, this Court presumes as correct the factual finding that petitioner received credit for the time spent in custody in November 2005. *See* 28 U.S.C. § 2254(e)(1). Petitioner has not rebutted that presumption of correctness. Nor has petitioner shown that the decision to deny his time-credit claim is contrary to, or involved an unreasonable application of, any Supreme Court precedent.[5] He has not shown that the decision is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Consequently, petitioner is entitled to no federal habeas relief on his pre-revocation time credit claim.

Petitioner points to a Nebraska Department of Corrections (NDOC) document as definitive proof that he was incarcerated in Nebraska in August 2005, as well as a few days in 2004 (July 2 through 21, 2004).[6] (*See* Reply at 21 (referring to App. B attached to Answers to MJQ).)[7] The document does not show why he was incarcerated, however. (*See* App. B.) In addition, although parolees are entitled to time credit under Texas law for time spent in custody on a pre-revocation warrant (*see* Answer at 32), the record reveals no pre-revocation warrant issued by Texas until

---

[5] In fact, neither petitioner's state writ nor his memorandum in support of that writ identifies any applicable Supreme Court precedent regarding Claim 3. *See* S.H.R. at 9-10 (state writ); 38-39 (memorandum). His federal petition likewise identifies no applicable Supreme Court precedent regarding Claim 3. (Pet. at 7.)

[6] Petitioner's petition does not assert a time-credit claim for the July 2004 incarceration.

[7] The document is also found in the state habeas record. *See* S.H.R. at 22.

8

October 2005, *see* SSCR at 11. The NDOC document does not entitle petitioner to federal habeas relief on his third claim.

## V.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VI.  RECOMMENDATION

The Court should **DENY AS MOOT** petitioner's revocation and time credit claims and **DENY** with prejudice the remaining claim in the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 21st day of August, 2009.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE